| | |
|---|---|
| Stephen Lemmon | Mark C. Taylor |
| Texas Bar No. 12194500 | Texas Bar No. 19713225 |
| Streusand Landon Osborne & Lemmon LLP | Kane Russell Coleman Logan PC |
| 1801 N. Mopac Expwy, Suite 320 | 401 Congress Avenue, Suite 2100 |
| Austin, Texas 78746 | Austin, Texas 78701 |
| Telephone (236-9900) | Telephone: (512) 487-6560 |
| Email: lemmon@slollp.com | Email: mtaylor@krcl.com |

*Attorneys for FCI-SLG, LLC*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 25-80481-mv1-11 |
| | § | |
| FCI SAND OPERATIONS, LLC, *et al*, | § | |
| | § | |
| Debtors.[1] | § | Jointly Administered |

**AMENDED PRELIMINARY OBJECTION OF FCI-SLG, LLC TO DEBTORS' EMERGENCY MOTION FOR INTERIM AND FINAL APPROVAL OF SUPERPRIORITY AND FIRST PRIORITY SECURED POSTPETITION FINANCING[2]**

**TO THE HON. MICHELLE V. LARSON, UNITED STATES BANKRUPTCY JUDGE**

FCI-SLG, LLC ("**Secured Lender**"), the primary secured creditor of FCI Sand Operations, LLC and FCI South LLC (the "**Debtor**"), hereby files this Preliminary Objection (the "**Objection**") to *Debtor's Emergency Motion for Interim and Final Approval of Superpriority and First Secured Postpetition Financing* (the "**Motion**"):

**SUMMARY OF OBJECTION**

1. Secured Lender holds a lien on substantially all of the Debtors' assets, securing repayment of a Promissory Note in the original principal amount of $30,000,000, of which $26.5

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if any, are: FCI Sand Operations, LLC (2539) and FCI South, LLC (4193) (the "Debtors"). The location of the Debtors' service address is 606 County Rd. 121, Marble Falls, TX 78654.

[2] This is filed as "Amended" to correct two typographical errors in names referenced in the original version.

has been advanced, and other obligations under the Loan Agreement. By this Motion, the Debtor seeks to layer in an additional $4.5 million of debt that primes the Secured Lender, on top of the $1.5 million approved on an interim basis at the July 31, 2025 hearing.

2. Debtors contend that Secured Lender is protected by an equity cushion. Debtors fail to reveal that: Debtors lost almost $4 million from operations in 2024 and have lost over $4 million in the first seven months of this year. Additionally, only one of the Debtors' two plants is operating at this time. In the first 2 weeks of the case, Debtors have generated only $645,000 in sales and are averaging less than 2,000 tons per day in sales – well below the break-even point. Moreover, notwithstanding the Debtors' prior representations that the cost to complete construction was to be $25 million (of which $17 million remained at the time), Debtors have failed to achieve profitability notwithstanding receiving over $50 million in loans, equity infusions and customer prepayments.

3. Secured Lender is submitting this as a preliminary objection because the Debtors have not provided the information necessary to allow a full objection. At this time, the Debtors have not provided:

- necessary information on postpetition operations, expenses and payments;

- a proposed final DIP budget;

- a form credit agreement;

- a form final order;

- certain of the documents requested in a Request for Production served by Secured Lender on August 11, 2025, with a return date of August 18, 2025; some of the documents yet to be provided include bank statements and pending purchase orders;

- the valuation report from GlassRatner.

4. Additionally, a corporate representative deposition is set for Monday August 25, 2025, along with a deposition of the Debtors' employee, Paul Sheperd. These depositions were

scheduled for August 22, 2025, but rescheduled at the request of Debtors' counsel.

## BACKGROUND

A. **The Debtors' Pre-Petition Financial Arrangement with Secured Lender**

5. On December 8, 2023, Secured Lender, Debtor FCI Sand Operations, LLC ("FCI Sand") and Field Camp Investments, LLC ("Field Camp") entered a "Loan Agreement," which governed the funding to be provided by Secured Lender. On the same day, FCI Sand executed a Promissory Note payable to Secured Lender, in the amount of $30,000,000, or such amount as may be advanced. The Promissory Note and FCI Sand's other obligations to Lender were secured by, inter alia, a lien on all or substantially all of FCI Sand's assets.

6. Secured Lender has advanced $26.5 million under the Loan Agreement and Promissory Note.

B. **Operations Prior to Bankruptcy**

7. At the time the Secured Lender entered the Loan Agreement, the principals of FCI Sand represented that the cost to construct the frac sand operation would be between $17 and $25 million, some of which had already been spent. Secured Lender initially advanced funds for further construction, to reimburse costs already expended, and to pay off existing first lien debt.

8. In addition to the funds advanced by Secured Lender, the Debtors and/or FCI on behalf of Debtors set up a factoring facility of $5 million and have received at least the following cash infusion amounts:

| | |
|---:|---|
| $6,050,000 | Loan from Ramming Materials |
| $1,451,000 | Construction Advance from Ramming Materials |
| $500,000 | Advance from Tiki Trucking |
| $11,700,000 | Sales of equity interests |
| $2,900,000 | Customer prepayment -- Liberty (mid 2024) |
| $3,000,000 | Customer prepayment -- BPX (mid 2024)[3] |

---

[3] Additionally, the Debtors entered a factoring agreement with Momentum. As of July 31, 2025, approximately $3.3 million was outstanding. These amounts also do not include the $1.5 million in interim DIP financing.

9. Accordingly, since December 2023, over $50 million has been provided to the Debtors, yet the operations (1) remain unprofitable and (2) not all construction has been completed. The Debtors reported a loss of almost $4 million for 2024, and operations have resulted in a loss of over $4 million for the first seven months of 2025. [4]

10. Upon information and belief, Debtors are selling their frac sand, on average, at approximately $27.00 per ton. Debtors have never been able to provide an accurate detail for the precise cost to produce the sand; moreover, each ton is burdened with unusually high royalty payments of $5 per ton. Four dollars of this amount is payable to Gary Martin, an insider of the Debtors.

**OBJECTION**

11. The Motion should be denied because it cannot satisfy the criteria for approval under section 364(d)(1) (B). Under section 364(d)(1)(B), the Debtors must make a showing that "there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted." The Debtors proposes to adequately protect Secured Lender through the alleged "equity cushion."

12. The Debtor cannot meet its burden to obtain a priming DIP financing under section 364(d) of the Bankruptcy Code. Pursuant to section 364(d)(1), the Court may, after notice and a hearing, authorize the Debtor to incur debt secured by a senior or equal lien *only* if (i) it is unable to obtain credit otherwise; (ii) that the transaction is within the Debtor's business judgment (or, meets the more stringent criteria of the entire fairness doctrine, if applicable); and (iii) that the interests of the primed lienholders are adequately protected. 11 U.S.C. § 364(d)(1); *see also In re Yellowstone Mountain Club, LLC*, No. 08-61570, 2008 WL 5875547 at *7 (Bankr. D. Mont., Dec.

---

[4] Earlier this year, Debtors hired Paul Shepherd to manage operations. Notwithstanding this hire, Debtors have continued to pay John Nelson and Kevin Collier for unspecified work and also continue to make payments to their companies for services.

17, 2008).

13. Under section 364(d)(1), a court may not approve a non-consensual priming DIP unless the debtor proves "there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted." 11 U.S.C. § 364(d)(1)(B). Importantly, the debtor "has the burden of proof on the issue of adequate protection." *Id*. § 364(d)(2).

14. Courts recognize that "[p]riming is extraordinary relief requiring a strong showing that the loan to be subordinated is adequately protected. Bankruptcy judges are required to grant Section 364(d) financing only upon a tangible demonstration of adequate protection." *In re LTAP US, LLLP*, Case No. 10-14125(KG), 2011 Bankr. LEXIS 667, at *9 (Bankr. D. Del. Feb. 18, 2011) (citing *In re Swedeland Development Group, Inc.*, 16 F.3d 552 (3d Cir. 1994)). Because of its extraordinary nature, a priming DIP must be a "last resort," and courts must be "particularly cautious when evaluating whether the subordinated creditor is adequately protected." *In re Stoney Creek Techs., LLC*, 364 B.R. 882, 890 (Bankr. E.D. Pa. 2007) (citation and internal quotation marks omitted); *see also In re YL W. 87th Holdings I LLC*, 423 B.R. 421, 441 (Bankr. S.D.N.Y. 2010) ("[G]ranting post-petition financing on a priming basis is extraordinary and is allowed only as a last resort.").

15. The Debtors cannot meet its burden under section 364(d)(1)(B), because there is no equity cushion. "[I]n determining whether a secured creditor's interest is adequately protected, most courts engage in an analysis of the property's 'equity cushion'—the value of the property after deducting the claim of the creditor seeking relief from the automatic stay and all senior claims." *Matter of Mendoza*, 111 F.3d 1264, 1272 (5th Cir. 1997) (quoting *Indian Palms Assoc., Ltd.*, 61 F.3d 197, 207 (3rd Cir.1995)). While an equity cushion may provide adequate protection, courts typically require that collateral value exceed the amount of debt outstanding by at least 20%. *See, e.g., In re McKillips*, 81 B.R. 454, 458 (Bankr. N.D. Ill. 1987) ("Case law has almost uniformly

held that an equity cushion of 20% or more constitutes adequate protection.") (collecting cases); *cf. Nantucket Inv'rs II v. Cal. Fed. Bank (In re Indian Palms Assocs.),* 61 F.3d 197, 206 (3d Cir. 1995); *see also In re JER/Jameson Mezz Borrower II, LLC*, 461 B.R. 293, 305 (Bankr. D. Del. 2011) (finding 9% equity cushion to be inadequate). Moreover, "[v]aluation in a given case depends on that calculation which properly reflects a secured creditor's true state of protection. The concept of adequate protection does not envision a court stripping a secured creditor of the benefit of its bargain." *In re Phoenix Steel Corp.*, 39 B.R. 218, 224-25 (D. Del. 1984) (citing H. Rep. No. 95–595, 95th Cong., 1st Sess. 339 (1977), reprinted in 1978 U.S. Code Cong. & Admin. News 5963, 6295)).

16. As noted above, the Debtors have not provided a valuation report at this time and Secured Lenders will need time to review the report and depose the expert. Regardless of any report tendered by Debtors, the fact is that the Debtors have not operated profitably, have incurred substantial cost overruns in constructing the plants, and have been building a growing overdue accounts payable obligation, despite constant cash infusions. Based on the information provide as of August 22, 2025, the current sales levels of less than 2,000 tons per day will result in substantial ongoing losses. Stacking more debt on top of the Secured Lender's debt in this situation is untenable, and if past practice is any indication, will also not stabilize Debtor's financial condition.

17. Secured Lender will supplement this Objection upon receipt of the matters set forth above and completion of the depositions.

WHEREFORE, for the foregoing reasons, Secured Lender respectfully requests that the Court sustain this Objection, deny the Motion, and grant Secured Lender such other and further relief to which Secured Lender is justly entitled.

Respectfully submitted,

**STREUSAND, LANDON, OZBURN & LEMMON LLP**
Stephen W. Lemmon
State Bar No. 12194500
lemmon@slollp.com
Rhonda B. Mates
State Bar No. 24040491
mates@slollp.com
801 S. MoPac Expressway, Suite 320
Austin, Texas 78746
Telephone: (512) 236-9900
Telecopier: (512) 236-9904

and

**KANE RUSSELL COLEMAN LOGAN PC**

By: /s/ Mark C. Taylor
      Mark C. Taylor
      State Bar No. 19713225
401 Congress Avenue, Suite 2100
Austin, Texas 78701
Telephone: (512) 487-6560
Telecopier: (214) 777-4299
Email: Mtaylor@krcl.com

**ATTORNEYS FOR FCI-SLG, LLC**

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing document has been served electronically upon those parties receiving the Court's ECF e-mail on this 22nd day of August, 2025, including counsel listed below:

Davor Rukavina, Esq.
J. Kyle Jaksa, Esq.
Munsch Hardt Kopf & Harr, P.C.
500 N. Akard St., Suite 4000
Dallas, Texas 75201
drukavina@munsch.com
kjaksa@munsch.com

                    */s/ Mark C. Taylor*
                    Mark C. Taylor