Stephen Lemmon                          Mark C. Taylor
Texas Bar No. 12194500                  Texas Bar No. 19713225
Streusand Landon Osborne & Lemmon LLP   Kane Russell Coleman Logan PC
1801 N. Mopac Expwy, Suite 320          401 Congress Avenue, Suite 2100
Austin, Texas 78746                     Austin, Texas 78701
Telephone (236-9900)                    Telephone:  (512) 487-6560
Email: lemmon@slollp.com                Email:  mtaylor@krcl.com

*Attorneys for FCI-SLG, LLC*

## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 25-80481-mv1-11 |
| | § | |
| **FCI SAND OPERATIONS, LLC**, *et al*, | § | |
| | § | |
| Debtors.[1] | § | **Jointly Administered** |

## MOTION OF FSI-SLG, LLC PURSUANT TO 28 U.S.C. § 1412 AND BANKRUPTCY RULE 1014 TO TRANSFER VENUE

**If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txnb.uscourts.gov/ no more than twenty-four (24) days after the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk and filed on the docket no more than twenty-four (24) days after the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

TO THE HONORABLE MICHELLE V. LARSON, UNITED STATES BANKRUPTCY JUDGE:

FCI-SLG, LLC ("**Secured Lender**") the primary secured creditor of Debtors (the

"**Debtors**"), hereby moves this Court, pursuant to 28 U.S.C. § 1412 and Rule 1014 of the Federal

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if any, are: FCI Sand Operations, LLC (2539) and FCI South, LLC (4193) (the "Debtors"). The location of the Debtors' service address is 606 County Rd. 121, Marble Falls, TX 78654.

Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for entry of an order transferring venue of this case to the Western District of Texas, San Antonio Division or the Austin Division (the "**Western District**"):

## Summary and Factual Background

1.      Debtors filed these cases in the Northern District of Texas, despite having no connection to the Northern District of Texas.  Specifically:

■    Debtors operate frac sand mining operations at 2 locations:  a mine located near Pleasonton, Texas, and a leased mine located near Three Rivers, Texas (the "**Property**"). Pleasonton is in Atascosa County, which is in the Western District of Texas, San Antonio Division.   Three Rivers is in Live Oak County, which is in the Southern District of Texas, Corpus Christi Division. The Three Rivers facility is not operating and was not operating for some time before the Petition Date.

■    In their Voluntary Petitions, the Debtors  list their home office at 13201 FM Road 812, Del Valley, Texas (Western District, Austin Division), for FCI South, and 606 County Road 121, Marble Falls, Texas (also the Western District of Texas, Austin Division). As noted in Debtors' filings and as referenced in footnote 1 above, the "service address" is the Marble Falls, Texas address.

■    The Debtors' principals, and executives, Kevin Collier and John Nelson, both reside in the Western District of Texas, Austin Division. The Debtors have retained Paul Shepherd, who is now President.  Mr. Shepherd lives and

works remotely in Denver, CO., but works at the Debtors' offices and facilities when in Texas.

- The Secured Lender has its headquarters and offices in Austin, Texas.

- Of FCI Sand's 20 Largest Unsecured Creditors, seven are in the Western District, three in the Northern District, and the others are in the Southern District or out of state. FCI South lists 2 unsecured creditors, with the largest (Cutro Paisanas Ranch, Inc., a royalty interest owner) being located in San Antonio.

- A primary creditor and witness is Gary Martin, and/or entities owned by him, which claim to own royalties totaling $4 per ton. Mr. Martin lives in Brady, Texas, in the Western District of Texas, San Antonio Division.

- At a deposition on August 25, 2025, the Debtors' representative testified that FCI's books and records are all maintained either in the Western or Southern Districts of Texas.

2.     The primary connection with the Northen District is the Debtors' counsel, Davor Rukavina, and its "ordinary course" counsel, Meagan Martin Powers. The convenience of the Debtors' counsel is not a venue factor.

3.     Fundamentally, this is a case in which neither the assets, operations nor offices of the Debtors are in the Northern District. The primary connections are in the Western District. Accordingly, the Court should transfer this case to the Western District in the interest of justice and for the convenience of the parties.

## Argument & Authorities

4.      Under section 1408 of title 28 of the United States Code, an entity may file a bankruptcy petition in any judicial district in which: (a) for the prior 180 days it (i) was domiciled, (ii) resided, (iii) had its principal place of business, or (iv) had its principal assets; or (b) any one of its affiliates currently have a bankruptcy case pending. *See* 28 U.S.C. § 1408.

5.      Transfer of venue is governed by 28 U.S.C. § 1412, which provides that "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412.

6.      Even if venue is proper under section 1408, a court nevertheless "may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412; *see, e.g., In re ERG Intermediate Holdings, LLC*, Case No. 15-31858, 2015 WL 6521607 at *4 (Bankr. N.D. Tex. Oct. 26, 2015) ("Even if venue is technically proper, courts may still exercise their discretion to transfer a case to another District in the interest of justice or for the convenience of the parties.") (citing 28 U.S.C. § 1412 and FED. R. BANKR. P. 1014(a)(1)); *see also In re Grand Dakota Partners, LLC*, 573 B.R. 197, 202 (Bankr. W.D. N.C. 2017) (finding the location of the Debtor's assets supported transfer of the bankruptcy cases).

7.      Under the framework established by 28 U.S.C. § 1412 and FED. R. BANKR. P. 1014(a)(1), if either the "interest of justice" or "the convenience of the parties" favors the transfer of venue, the Court may grant such relief. *See In re West Coast Interventional Pain Med., Inc.*, 435 B.R. 569, 579 (Bankr. N.D. Ind. 2010). The moving party bears the burden of showing that either the "convenience of the parties" or the "interests of justice" merits the transfer of the case; however, "[t]he decision of whether to transfer venue is within the court's discretion based on a

4

case-by-case analysis of the facts underlying each particular case." *Grand Dakota Partners*, 573 B.R. at 201 (internal citation omitted).

8.      While a debtor's selection of a particular forum is entitled to some deference in connection with requests to transfer venue, "the weight afforded to a debtor's choice is diminished when the 'choice of forum is not directly related to the operative, underlying facts of the case.'" *Grand Dakota Partners*, 573 B.R. at 203 (quoting *In re Rehoboth Hospitality, LP,* Case No 11-12798, 2011 Bankr. LEXIS 3992, at *10 (Bankr. D. Del. Oct. 19, 2011)); *see also Son v. Coal Equity, Inc. (In re Centennial Coal, Inc.)*, 282 B.R. 140, 144-45 (Bankr. D. Del. 2002)); *In re Abacus Broadcasting Corp.*, 154 B.R. 682, 686-87 (Bankr. W.D. Tex. 1993) (expressing concern about a debtor's right to forum shop).

9.      Here, under both the "convenience of the parties" and the "interest of justice" tests, the facts of this case warrant transfer of this case to the Western District, where Debtors' primary asset is located, where many of its creditors are located, and where the bulk of witnesses reside.

### A.      Debtor is Not Domiciled and Does Not Reside in the Northern District

10.      The Bankruptcy Code does not specifically define the terms "domicile" and "residence." Some courts have held that a corporation's domicile is its state of incorporation. *See In re ERG Intermediate Holdings, LLC*, 2015 WL 6521607 at *4.  Notwithstanding Judge Hale's decision in *ERG (*holding that it was proper to file in any district in the state of incorporation[2]), Judge Jernigan granted a motion to transfer venue in a case filed in the Northern District (and in which the debtor relied on *ERG* as the basis for filing) where the Debtor's property and operations were in the Western District, and the primary witnesses were in the Western District, not the

---

[2] There are no reported decisions citing *ERG* as authority.

Northern District. *See In re Blue Chip Hotels Asset Group – Round Rock, LLC*, No. 19-32642-sgj11 (Bankr. N.D. Tex. Sept. 26, 2019)(ruling attached as **Exhibit A**).

11.     Similarly, Judge Robinson, in the Western District, recently entered a show cause order for a case filed in the Western District, where the debtor's property and operations are in the Southern District.  In re Dalio Holdings I LLC, Case No. 25-1157-SMR (Bankr. W.D. Tex. Aug. 27, 2025)(Dkt. 22, *Order to Appear and Show Cause* "the "Show Cause Order"). In *Dalio*, the debtor's Petition lists a business address in Houston, Texas, and its schedules list the location of the debtor's property as Houston, Texas.  The Show Cause Order noted the location of the debtor and sets a hearing "to determine whether the case should be transferred to another district…dismissed for lack of proper venue…be dismissed with prejudice, and whether the Court should impose sanctions…". *See* Show Cause Order, **Exhibit B** hereto.

12.     Moreover, courts have found that the appropriateness of venue in a particular district still depends on the facts of the case and the debtor's direct connection to the district. For example, in *In re Positron Corporation*, 541 B.R. 816 (Bankr. N.D. Tex. 2015), the court found that venue was proper in the Northern District of Texas because the debtor was "a Texas corporation that has maintained operations in the Northern District, specifically Lubbock, Texas." *Id*. at 817-18. Other courts have taken the same approach. *See, e.g., City of Clinton, Arkansas v. Pilgrim's Pride Corp*., No. 5:09-CV-386-Y, 2009 WL 4884430, at *3, 5, 7 (N.D. Tex. Dec. 17, 2009) (finding venue to be proper in the Eastern District of Texas, where debtor's principal assets, place of business, and headquarters were located).

13.     A central purpose of the venue statute is to protect against "the risk that a plaintiff will select an unfair or inconvenient place of trial." *In re Newport Creamery, Inc*., 265 B.R. 614, 622 n.3 (Bankr. M.D. Fla. 2001) (citing *Leroy v. Great W. United Corp.,* 443 U.S. 173, 184

(1979)). Allowing debtors to file bankruptcy cases in any district in the states in which they are incorporated, regardless of whether they have any connection to that district, is contrary to that purpose and promotes improper forum shopping. *See In re Abacus Broad. Corp.*, 154 B.R. at 687 (affirming transfer where debtor filed its petition in El Paso while employees and operations were in Salt Lake City, noting that "the smell of forum shopping was strong indeed"). This is especially the case here, where there are no assets in the Southern District, and where no other related case is in the Southern District.

14.     Debtor has no substantive connection to the Northern District but has numerous connections to the Western District. The Debtors' choice of venue in the Northern District is inconvenient for all parties in interest with a material economic stake in the case.

### B.    The Case Should be Transferred to the Western District for the Convenience of the Parties

15.     The Fifth Circuit established the following criteria courts should consider in determining whether to transfer venue of a chapter 11 case under the "convenience of the parties" prong: (1) the proximity of creditors of every kind to the court; (2) the proximity of the debtor to the court; (3) the proximity of the witnesses necessary to the administration of the estate; (4) the location of the assets; (5) the economic administration of the estate; and (6) the necessity for ancillary administration should liquidation result. *See In re Commonwealth Oil Refining Co.,* 596 F.2d 1239, 1247 (5th Cir. 1979) ("*CORCO*"); *accord In re Pope Vineyards*, 90 B.R. 252, 255 (Bankr. S.D. Tex. 1988). All of these factors weigh in favor of this case being transferred to the Western District.

### 1.    The Proximity of Creditors of Every Kind to the Court

16.    As detailed *supra*, only 3 of the top 20 creditors are located in the Northern District, and 7-8 of such creditors of its creditors are either located in the Western District, as is Gary Martin, whose entities are being paid a $4 per ton royalty.

### 2.    The Proximity of Debtor to the Court

17.    The Debtors' Pleasonton mine is in the Western District (and its Three Rivers facility is approximately an hour from San Antonio). Each of the Debtors' business address is in the Western District, as are its books.

### 3.    The Proximity of the Witnesses Necessary to the Administration of the Estate

18.    The "physical location of witnesses is not as important a consideration as the other *CORCO* factors." *See In re B.L. of Miami, Inc.*, 294 B.R. 325, 332 (Bankr. D. Nev. 2003). However, this factor still weighs in favor of transferring this case to the Western District. The Debtors' principals, its employees with books and records, the Secured Lender and Gary Martin are in the Western District.

### 4.    The Location of the Assets

19.    "Many courts have placed more importance on the location of the assets than did the [*CORCO*] court" and on the facts before the court, which are similar to those present here, "this factor must be considered one of paramount importance." *Pope Vineyards*, 90 B.R. at 258. In *Pope Vineyard* the court concluded:

> The case under consideration is one that concerns real property. The location of the bulk of the assets must weigh heavily as a factor because the business of this debtor relies upon its realty. The facts of this business greatly differ from the facts faced by the *Commonwealth Oil* court. Based on this consideration, venue is proper where the vineyard is located, in the federal court responsible for Napa Valley, California.

*Id.*

20.     Other courts have also focused on the location of the debtor's "principal asset" as the factor they consider to "overwhelmingly compel transfer." *In re A&D Care, Inc.*, 86 B.R. 43, 45 (Bankr. M.D. Pa. 1988) (transferring venue of case improperly filed in Middle District of Pennsylvania to Western District of Pennsylvania based on facts and circumstances, including pending litigation in the Western District and "relying primarily on the fact that debtor's major asset may eventually be determined to be located in [the Western District of Pennsylvania]") (citing *Old Delmar Corp.*, 45 B.R. 883 (S.D.N.Y. 1985); then citing *In re Pickwick Place, Ltd. Partnership*, 63 B.R. 290, 292 (Bankr. N.D. Ill. 1986)); acco*rd Hadar Leasing International Co., Inc. v. D.H. Overmeyer Telecasting Company, Inc. (In re Hadar Leasing International Co., Inc.)*, 14 B.R. 819, 821 (Bankr. S.D.N.Y. 1981) ("Finally, the factor which overwhelmingly militates in favor of transfer was . . . that substantially all of its assets are in Ohio."); *In re FRG, Inc*., 107 B.R. 461, 472 (Bankr. S.D.N.Y. 1989) ("Location of assets assumes great significance if liquidation is in the offing . . . or if the case involves local concerns and local witnesses."); *In re Bell Tower Associates, Ltd.*, 86 B.R. 795, 803 (Bankr. S.D.N.Y. 1988).

21.     Here, Debtors' estate consists solely of the mines (in the Western and Southern Districts) and operations located in the Western District. As a result, this factor weighs heavily in favor of transferring the case to the court that can most easily oversee the assets of Debtor's estate—the Western District.

### 5.     The Economic Administration of the Estate

22.     The promotion of the economic and efficient administration of the estate is the factor accorded the most weight in the "convenience of the parties" analysis. *See CORCO*, 569 F.2d at 1247; *accord LSREF2 Baron, LLC v. Aguilar*, 2013 WL 230381, at *4 (N.D. Tex. 2013) ("In evaluating the interest of justice factors, several courts have found the most important factor

is whether transfer would promote the economic and efficient administration of the bankruptcy estate."); *Pope Vineyards*, 90 B.R. at 258 (same).

23.     In *Pope Vineyards*, the court concluded that based on the nature of its business, Pope Vineyards "must be administered in the court closest in proximity to the real estate asset and the bulk of its creditors. In this way, economic administration will be affected." *Id.* at 259; *accord In re Greenhaven Assocs.*, 93 B.R. 35, 41 (Bankr. S.D.N.Y. 1988) ("The relative economic harm to the debtor caused by a transfer of venue to the Western District of Kentucky would be minimal, because the debtor retains employees in Kentucky to deal with tenants, collect rents and maintains the premises. The economics of administering the estate will be furthered because most of the creditors are located in or near Kentucky, whereas only one creditor, the Debtors' managing agent, is located in New York.").

24.     Here, the economics of estate administration favor transfer where Debtors' significant assets consist almost entirely of property and operations located in the Western District. Additionally, as noted above, many creditors are located in the Western District and few of the creditors are located in the Northern District. As such, the economics of administering Debtors' estate will be furthered with a transfer to the Western District. Accordingly, the Western District is the most appropriate venue to advance the interests of judicial economy and efficient case administration.

**6.      The Necessity for Ancillary Administration Should Liquidation Result**

25.     Little weight should be given to this factor because anticipating the failure of these chapter 11 cases "is not a logical basis in weighing venue," especially at this early stage of the cases. *B.L. of Miami*, 294 B.R. at 333 (citing *CORCO*, 596 F.2d at 1248). If the Court affords any weight to this factor, it should be in favor of transfer because if it becomes necessary to convert

this case to chapter 7, the U.S. Trustee would appoint a panel trustee in the Southern District who would have to administer assets located approximately 195 miles away in San Antonio. *See Abacus*, 154 B.R. at 684. Such assets would be administered more economically and efficiently by a chapter 7 trustee in the Western District.

26.     The facts and circumstances of this case warrant transfer of this case to the Western District for the convenience of the parties.

      C.     **The Case Should Be Transferred to the Western District in the Interest of Justice**

27.     Courts evaluating the "interests of justice prong" consider the following factors:

    (1)     whether transfer would promote the economic and efficient administration of the bankruptcy estate;

    (2)     whether the interests of judicial economy would be served by the transfer;

    (3)     whether the parties would be able to receive a fair trial in each of the possible venues;

    (4)     whether either forum has an interest in having the controversy decided within its borders;

    (5)     whether the enforceability of any judgment would be affected by the transfer; and

    (6)     whether the plaintiff's original choice of forum should be disturbed. *In re Dunmore Homes*, 380 B.R. 663, 672 (Bankr. S.D.N.Y. 2008) (transferring venue from S.D.N.Y. to E.D. Cal.) (citing *In re Enron Corp.*, 317 B.R. 629, 638–39 (Bankr. S.D.N.Y. 2004)).

28.     The "convenience of the parties" factors weighs heavily in favor of transfer and lead to the conclusion that the interests of justice are best served by transfer of this case. *See B.L. of Miami*, 294 B.R. at 334 (citing *Enron Corp.*, 284 B.R. at 386).

29.     There are significant reasons for this case being transferred to the Western District, including the ability for active creditor participation, and the fact that Debtors' primary asset is located in the Western District.  Conversely, the interest of justice is not served by keeping the case in the Northern District, a forum to which Debtor, as previously discussed, has no true connection.

30.     Based on the foregoing, this case should be transferred to the Western District in the interests of justice.

**WHEREFORE**, Secured Lender respectfully requests the entry of an order (a) transferring venue of this case to the Western District of Texas, Austin Division or San Antonio Division; and (b) granting such other and further relief as may be just and proper.

Respectfully submitted,

**STREUSAND, LANDON, OZBURN & LEMMON LLP**
Stephen W. Lemmon
State Bar No. 12194500
lemmon@slollp.com
Rhonda B. Mates
State Bar No. 24040491
mates@slollp.com
801 S. MoPac Expressway, Suite 320
Austin, Texas 78746
Telephone:  (512) 236-9900
Telecopier:  (512) 236-9904

And

**KANE RUSSELL COLEMAN LOGAN PC**

By: */s/ Mark C. Taylor*
      Mark C. Taylor
      State Bar No. 19713225
401 Congress Avenue, Suite 2100
Austin, Texas 78701
Telephone:  (512) 487-6560
Telecopier:  (214) 777-4299
Email: Mtaylor@krcl.com

**ATTORNEYS FOR FCI-SLG, LLC**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing document has been served electronically upon those parties receiving the Court's ECF e-mail on this 28th day of August, 2025, including counsel listed below:

Davor Rukavina, Esq.
J. Kyle Jaksa, Esq.
Munsch Hardt Kopf & Harr, P.C.
500 N. Akard St., Suite 4000
Dallas, Texas 75201
drukavina@munsch.com
kjaksa@munsch.com

*/s/ Mark C. Taylor*
Mark C. Taylor

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF TEXAS

BEFORE THE HONORABLE STACEY G. JERNIGAN, JUDGE

| | |
|---|---|
| In Re: | ) Case No. 19-32642-sgj11 |
| | ) DEBTOR'S APPLICATIONS to |
| BLUE CHIP HOTELS ASSET GROUP – | ) EMPLOY; DEBTOR'S EMERGENCY |
| ROUND ROCK, LLC, | ) MOTION to BORROW; and |
| | ) CREDITOR'S MOTION to |
| Debtor. | ) CHANGE VENUE |
| | ) September 26, 2019 |
| | ) Dallas, Texas |

Appearances:

| | |
|---|---|
| For the Debtor: | Vickie L. Driver |
| | Christina Walton Stephenson |
| | Crowe & Dunlevy |
| | 2525 McKinnon Street, Suite 425 |
| | Dallas, Texas  75201 |
| | |
| For Creditor Hotel Reposition Partners, LLC: | Eric J. Taube |
| | Waller Lansden Dortch & Davis LLP |
| | 100 Congress Avenue, 18th Floor |
| | Austin, Texas  78701 |
| | |
| From the Office of the U.S. Trustee, Region 6: | Stephen McKitt, Trial Attorney |
| | U.S. Department of Justice |
| | Office of the U.S. Trustee, Region 6 |
| | 1100 Commerce Street, Room 976 |
| | Dallas, Texas  75242-1496 |
| | |
| For Holiday Hospitality Franchising, LLC (via telephone): | Leib M. Lerner |
| | Alston & Bird LLP |
| | 333 South Hope Street, 16th Floor |
| | Los Angeles, California  90071 |
| | |
| Digital Court Reporter: | United States Bankruptcy Court |
| | Northern District of Texas |
| | Michael F. Edmond Sr., Judicial |
| | Support Specialist |
| | Earle Cabell Building, U.S. Courthouse |
| | 1100 Commerce Street, Room 1254 |
| | Dallas, Texas  75242 |
| | (214) 753-2062, direct; 753-2072, fax |
| | |
| Certified Electronic Transcriber: | Palmer Reporting Services |
| | 1948 Diamond Oak Way |
| | Manteca, California  95336-9124 |

Proceedings recorded by digital recording;
transcript produced by federally-approved transcription service.

*The Ruling of the Court*                                              35

1   Those folks don't bill by the hour.  They're okay spending their

2   time on the road, and that was their decision to make.  They do

3   have to pay me half time if I'm not working to get to Austin.

4   So that was the decision that was holistically made by this

5   debtor using their business judgment and in consultation with

6   their lawyers.

7            THE COURT:  Thank you.

8                      THE RULING OF THE COURT

9            THE COURT:  All right.  As noted in the beginning,

10  this motion to transfer venue is governed by 28 USC Section 1412

11  as well as Bankruptcy Rule 1014.  We have many reported opinions

12  in jurisprudence that also are either controlling on this Court

13  or persuasive to this Court.  The *Commonwealth* case,

14  *Commonwealth Oil Refining* case, 596 F.2d 1239 from the Fifth

15  Circuit, back in 1979, is the most-oft cited case that is

16  binding on this Court and various others that both sets of

17  lawyers have cited in their pleadings.

18          The Court believes that it is appropriate to grant the

19  motion to transfer venue that is before the Court.  These

20  situations are always, always very fact-specific.  Here, the

21  most compelling facts are that we have a single-asset real

22  estate case.  The sole assets, if you will, of the debtor are

23  the real estate located in Round Rock, Texas, the Western

24  District of Texas, which is a nonoperating at the moment hotel,

25  as well as the equipment and furniture.  These are the sole

*The Ruling of the Court*                                                                 36

1  significant assets of this estate.  This is very meaningful to

2  the Court.

3           Again, a single-asset real estate case is far

4  different from a debtor company where there are assets spread

5  over many venues and there in those cases might be several

6  viable venues to consider.  When you have just one asset that is

7  not even operating at the moment, has been closed down I think

8  the evidence said since January or thereabouts, and there are no

9  employees, this is a very significant and persuasive factor for

10  transferring venue to the situs of that real estate.

11          Second, we have a situation where there's really no

12  relevant relationship to the Northern District of Texas, you

13  know, other than lawyers and retainers.

14          Third, I am persuaded by the proximity-of-the-

15  witnesses factor.  Again, I understand that I'm being told

16  witnesses have no problem traveling three hours to Dallas, but

17  the fact remains that they are outside the subpoena party many

18  of the debtor's, you know, principals, former principals.  And

19  then we do have a debt, a secured debt that was recently

20  purchased by Mr. Taube's client.  And so the fact witnesses to

21  prove up the debt, the liens, any prepetition activity with

22  regard to the loan, those witnesses are at R Bank in Austin, so

23  again would be outside the subpoena power of this Court if

24  someone wanted to subpoena them.

25          All financial records are in the Western District of

1   Texas, it appears to be undisputed.  We have other secured

2   creditors in the Western District of Texas, BCHG, Home Tax

3   Solutions, and of course taxing authorities.  And, again, the

4   proximity of creditors generally I think strongly favors a

5   transfer here.  The evidence being that 7 out of 13 of the

6   general unsecured creditors are in the Western District of Texas

7   and hold, it looks like, well, well over 50 percent of the

8   aggregate dollar amount of claims.

9        Any future employees, if the hotel is opened in

10  October as hoped for, would be in the Western District of Texas.

11  And it appears that the valuation experts that would be relied

12  upon would be most likely from the Western District of Texas.

13       And then last but not least, I alluded to it in the

14  arguments, the ancillary administration factor is compelling

15  here.  If we had to have a Chapter 11 trustee or a conversion,

16  it would seem to be very burdensome to the U.S. Trustee as well

17  as any trustee likely to be familiar to the U.S. Trustee to be

18  appointed to have to travel down outside of the Northern

19  District.

20       So, again, these are always, always very fact-specific

21  situations, but the compelling facts here line up so that movant

22  has met its burden for transfer.  So that will be the ruling of

23  the Court.

24       I'm going to ask you, Mr. Taube, to prepare the

25  appropriate form of order, run it by Ms. Driver, run it by the

*The Ruling of the Court*                                                          38

1    U.S. Trustee, please.

2              MR. TAUBE:  Of course, Your Honor.

3              THE COURT:  All right.  So we're adjourned now.

4         (The hearing was adjourned at 11:26 o'clock a.m.)

5                              —o0o—

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

State of California                    )
                                       )      SS.
County of San Joaquin                  )


        I, Susan Palmer, certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages, of the digital recording provided to me by the United States Bankruptcy Court, Northern District of Texas, Office of the Clerk, of the proceedings taken on the date and time previously stated in the above matter.

        I further certify that I am not a party to nor in any way interested in the outcome of this matter.

        I am a Certified Electronic Reporter and Transcriber by the American Association of Electronic Reporters and Transcribers, Certificate Nos. CER-124 and CET-124.  Palmer Reporting Services is approved by the Administrative Office of the United States Courts to officially prepare transcripts for the U.S. District and Bankruptcy Courts.


Susan Palmer
Palmer Reporting Services

Dated November 4, 2019

# EXHIBIT B

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: August 27, 2025.**

_____
**SHAD M. ROBINSON**
**UNITED STATES BANKRUPTCY JUDGE**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | **CASE NO. 25-11157-SMR** |
| | § | |
| **DALIO HOLDINGS I LLC** | § | |
| | § | |
| **DEBTOR** | § | **CHAPTER 11** |

### ORDER TO APPEAR AND SHOW CAUSE

On July 30, 2025, the above-referenced Debtor (the "Debtor") filed a voluntary petition (the "Petition" at ECF No. 1) under chapter 11 without schedules. On August 13, 2025, the Debtor filed Schedules, Statements, and Summary (the "Schedules" at ECF No. 8). The Petition lists the Debtor's principal place of business as 1001 W. Loop S, Ste 700, Houston, TX 77027 in Harris County. *See* ECF No. 1, pg. 1.

Because the Debtor's current address is not located within the jurisdiction of the United States Bankruptcy Court for the Western District of Texas, Austin Division, *see* 28 U.S.C. § 124(d)(1), the Court shall conduct a show cause hearing to determine whether the case should

be transferred to another district, whether the case should be dismissed for lack of proper venue, whether the case should be dismissed with prejudice, and/or whether the Court should impose sanctions on the Debtor and/or Ali Choudhri, as the representative of the Debtor who signed the Petition and the Schedules under oath. *See* ECF No. 1, pg. 4; ECF No. 8, pg. 33.

Based on the foregoing, the Court finds that a show cause hearing should be held on **Thursday, September 4, 2025 at 9:30 a.m. (CT) via Zoom.** Accordingly,

**IT IS THEREFORE ORDERED** that counsel for the Debtor and Ali Choudhri, as the representative of the Debtor, shall appear at a show cause hearing on **Thursday, September 4, 2025 at 9:30 a.m. (CT) via Zoom.** Zoom URL: https://www.zoomgov.com/my/robinson.txwb. Call-in number: 669-254-5252; Meeting ID: 161 0862 5245.

**IT IS FURTHER ORDERED** that the Court will allow counsel for the Debtor and Ali Choudhri, as the representative of the Debtor, to submit evidence and show cause/explain to the Court (1) why this case was filed in this district; (2) why the Court should not impose sanctions; and (3) why the Debtor's case:

1.    should not be transferred to another district;

2.    should not be dismissed for lack of proper venue; and/or

3.    should not be dismissed with prejudice.

**IT IS FURTHER ORDERED** that any written response to this Show Cause Order shall be filed on or before **September 3, 2025**.

**IT IS FURTHER ORDERED** that the United States Trustee shall have standing to appear, be heard and present evidence on this Show Cause Order.

**IT IS FURTHER ORDERED** that the Court reserves the right to order reasonable and appropriate sanctions against counsel for the Debtor and/or Ali Choudhri, as the representative of the Debtor, if the Court determines that the case was filed in this district in bad faith.

**IT IS FURTHER ORDERED** that the Court reserves the right to order reasonable and appropriate sanctions if counsel for the Debtor and/or Ali Choudhri, as the representative of the Debtor, fails to appear at the show cause hearing.

**IT IS FURTHER ORDERED** that this Court retains jurisdiction to resolve any matters related to the interpretation, implementation, and enforcement of this Show Cause Order.

# # #