Davor Rukavina, Esq.
Texas Bar No. 24030781
J. Kyle Jaksa, Esq.
Texas Bar No. 24120923
**MUNSCH HARDT KOPF & HARR, P.C.**
500 N. Akard St., Ste. 4000
Dallas, TX 75201
Telephone:   (214) 855-7500
E-mail:      drukavina@munsch.com
             kjaksa@munsch.com

COUNSEL TO THE DEBTORS

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 25-80481-mvl-11 |
| FCI Sand Operations, LLC, *et al*. | § | |
| | § | Chapter 11 |
| Debtors.[1] | § | |
| | § | Jointly Administered |
| | § | |
| FCI SAND OPERATIONS, LLC AND FCI SOUTH LLC, DEBTORS | § | |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Adv. No. 26-_____ |
| v. | § | |
| | § | |
| THREE RIVERS SAND LLC AND BAZIL MOORE | § | |
| | § | |
| Defendants. | § | |

## DEBTORS' ORIGINAL COMPLAINT

TO THE HONORABLE MICHELLE V. LARSON, U.S. BANKRUPTCY JUDGE:

COME NOW FCI Sand Operations, LLC ("FCI Sand") and FCI South, LLC ("FCI South,"

and together, the "Debtors"), the debtors-in-possession in the above styled and numbered

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if any, are: FCI Sand Operations, LLC (2539) and FCI South, LLC (4193) (the "Debtors"). The location of the Debtors' service address is 606 County Rd. 121, Marble Falls, TX 78654.

DEBTORS' ORIGINAL COMPLAINT – Page 1

bankruptcy cases (the "Bankruptcy Cases"), and the plaintiffs in the above styled and numbered

adversary proceeding (the "Adversary Proceeding"), and files this the *Original Complaint* (the

"Complaint"), complaining of Three Rivers Sand LLC and Bazil Moore (the "Defendants," and

each, individually, a "Defendant"), and for cause and action would respectfully show the Court as

follows:

## I.    SUMMARY

1.    The Debtors own and run sand mines and production plants.  After filing for

bankruptcy, the Debtors were faced with a liquidity crisis, and had to stop paying unnecessary

fees, such as payments on account of a financing agreement.  However, upon the Debtors halting

of payment, the Defendants sought to exercise control over the Debtors' assets without authority

or Court order.  The Debtors seeks a determination that the Agreement (defined below) is a

financing agreement and an asset of the bankruptcy estates as well as the monetary damages for

damages caused by the Defendants' violation of the automatic stay and conversion of the Debtors'

assets.

## II.    JURISDICTION AND VENUE

2.    On July 30, 2025 (the "Petition Date"), the Debtors filed voluntary petitions for

relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the

Northern District of Texas, Dallas Division to be jointly administered.  The Debtors continue to

operate their business and to manage their estates (the "Estates") as debtors-in-possession pursuant

to sections 1107(a) and 1108 of the Bankruptcy Code.  On August 21, 2025, the United States

Trustee appointed a statutory committee of unsecured creditors in these Bankruptcy Cases (the

"Committee").  No trustee or examiner has been appointed.

3.      This Court has subject matter jurisdiction over this Complaint under 28 U.S.C. § 1334.  Such jurisdiction is core under 28 U.S.C. § 157(b)(2).

4.      To the extent any matter asserted herein does not give rise to a core proceeding, the Debtors consent to the entry of a final judgment on any issue or claim asserted in this Adversary Proceeding.

5.      Venue of this Complaint is proper in this District and Division under 28 U.S.C. §§ 1408 and 1409.

### III.    PARTIES

6.      FCI Sand Operations, LLC, one of the Debtors, is a limited liability company validly existing under the laws of Texas.  FCI Sand originally registered with the Texas Secretary of State in 2022.

7.      FCI South, LLC, one of the Debtors, is a limited liability company validly existing under the laws of Texas.  FCI South originally registered with the Texas Secretary of State in 2025.

8.      Upon information and belief, Defendant, Three Rivers Sand LLC is a Texas corporation (hereinafter referred to as "Three Rivers") organized and existing under the laws of Texas with its principal executive office address located at 1715 S. University Dr., Nacogdoches, Texas 75961 and Bazil Moore designated as Manager.  Pursuant to Fed. R. Bankr. P. 7004(b), Defendant may be served with process in this Adversary Proceeding by and through its registered agent as follows: Three Rivers Sand, LLC, c/o Bazil Moore, 1715 S. University Dr., Nacogdoches, Texas 75961.

9.      Upon information and belief, Defendant, Bazil Moore, is an individual and a resident of the State of Texas.  Pursuant to Fed. R. Bankr. P. 7004(b), Bazil Moore may be served

with process in this Adversary Proceeding anywhere that he may be found, including his known business address: Bazil Moore, 1715 S. University Dr., Nacogdoches, Texas 75961.

## IV.   FACTUAL BACKGROUND

10.   Together, the Debtors own and run several sand mines and production plants for high quality (98% quartz) sand used primarily in hydraulic fracking in the Eagle Ford Shale.  FCI Sand owns 187 acres and leases 1,450 acres, from which it mines and processes its sand at two plants.  FCI South owns 32 acres and a sand processing plant, at which it processes sand purchased from third parties or mined from FCI Sand.

11.   In the year leading up to the Petition Date, through that certain *Lease Agreement* dated as of January 23, 2025, with Three Rivers Sand, LLC (the "Agreement" attached hereto as Exhibit A), FCI South purchased its sand plant.  As part of the Agreement, FCI South leased the Premises (as defined in the Agreement) providing the Debtors with the land where the sand plant is located.  The Agreement also provided FCI South with the sole and exclusive option to purchase the Premises, the sand plant and other certain assets located on the Premises (together, the "South Plant"), at any time during the term of the lease for a total purchase price of $6,000,000.  The Agreement further provided for a term of five years, with FCI South to pay a monthly amount of $116,028.82, totaling $6,961,729.20 over five years, with $6,000,000 to be applied to the purchase price, fully paying the purchase price by the termination of the Agreement.

## A.   AUTOMATIC STAY VIOLATIONS

12.   Upon information and belief, prior to the Agreement, on December 7, 2021, Three Rivers acquired the Premises, from Sabine State Bank & Trust Company and processed frac sand and conducted operations on the Premises until selling the South Plant to the Debtors pursuant to the Agreement.  Defendants then began to be paid monthly payments under the Agreement by the

Debtors until October 2025 (excluding August 2025), where the Debtors had to stop making payments due to a liquidity crisis.

13.     Upon information and belief, seeking to force payment by the Debtors, and exercising improper control over the Debtors' estate, on January 20, 2026, Mr. Moore went to the South Plant and locked the Debtors out, preventing access to the South Plant.  Further, Mr. Moore called the local sheriff's office to prevent the Debtors from removing the Debtors' property from the South Plant to aid with production at the Debtors' other sand plants.  The Debtors, through counsel, reached out to the Defendants seeking for the Defendants to refrain from any further interference and reminding the Defendants that the Debtors' Bankruptcy Cases were still proceeding.

14.     However, on January 30, 2026, the Debtors became aware of a theft of two of the Debtors' key computers required for the Debtors to process sand at the South Plant.  Such computers were not located next to each other, and had no value outside of their use to the Debtors, and were not labeled as vital to the operations, however nothing else of value appeared to be taken.  There was no forcible entry or breaking down of a door or lock to get to the servers.  Upon information and belief, the only parties with the knowledge that taking such computers would cripple the Debtors' operations, as well as the personal knowledge of the whereabouts of the computers, was Mr. Moore, who had previously operated the South Plant, and the Debtors themselves.  Further, it defies reason that a thief who is an unrelated party would be someone who has a key to the premises and would have searched the entire plant and only taken those two specific computers while leaving valuable metals, equipment, and other computers also held at the South Plant behind.

15.     The Debtors therefore allege that it was Mr. Moore who committed the referenced theft: the history of hostility by the Defendants against the Debtors; the prior attempts to lock out the Debtors and to call the police to block their entry; the entry onto the premises with no visible signs that force was used; and the incredible coincidence that the only things taken were computers with no "street" or other value to anyone, but which are critical to the operation of the plant, all point to only one logical thief: Mr. Moore.  The Debtors intend to learn more through the process of discovery, and their own investigation remains ongoing.

16.     Further, the loss of these computers could not have come at a worse time, as that weekend, the Debtors received an emergency order for frac sand from one of the Debtors' long-time consumers seeking all sand the Debtors could provide, throughout that entire weekend, at a significant upcharge to market price.  The Debtors could not afford to miss such an incredible opportunity due to the overreach of a creditor interfering with and taking Estate assets.  This caused significant, direct damages to the Debtors.

17.     Further, even if the Agreement was a lease, the Defendants' interference through locking the South Plant and potential removal of computers vital to the Debtors' operations violate the fundamental goal of the automatic stay, to give the Debtors the breathing room to reorganize. The Defendants' actions injured the Debtors' operations, harming the Debtors and every other party in interest of these Bankruptcy Cases.  Further, the Debtors were forced to find and install replacement computers on an emergency basis, causing the Debtors to incur further costs and worse, by the time the replacements had been installed, the opportunity had passed.

18.     Such actions by Mr. Moore have damaged the Debtors in an amount to be proved at trial.

**B.      THE AGREEMENT IS A FINANCED PURCHASE AGREEMENT**

19.      When deciding whether a document is a lease or a financing agreement, the content of the agreement and surrounding circumstances are controlling, not the language and designation contained in the agreement.  *See In re Triplex Marine Maintenance, Inc.*, 258 B.R. 659 (Bankr. E.D. Tex. 2000).   The Agreement contains an option to purchase for no additional consideration upon the termination of the Agreement's term.  *See* Agreement, Exhibit C, Payment Schedule. Indeed, the "rent" payments for the life of the Agreement are shown to be determined off the purchase price, amortized over 5 years at an interest rate of 6%.  *See* Agreement, Sec. 3.01.  The payments required to be made to Three Rivers under the Agreement were computed to provide it with a particular return on its financed purchase agreement.

20.      FCI South also assumed many of the obligations normally associated with ownership.  For instance, the Agreement provides that FCI South are responsible for all utilities, insurance, tax and maintenance payments.  *See* Agreement.  Further, FCI South is required to make all necessary repairs, structural and nonstructural, ordinary and extraordinary, and foreseen and unforeseen, with Three River not being required to maintain or repair the Premises or provide any services to the Premises.  *See* Agreement, Sec. 6.01.

21.      The Agreement was not a lease, but a financing agreement.  As such, the computers, the South Plant, and all other equipment and assets being sold under the Agreement were the Estates' property.

## V.      CAUSES OF ACTION

**COUNT I**              **DECLARATORY JUDGMENT**

54.      The Debtors refer to and incorporate all paragraphs and allegations set forth in the above and below paragraphs as though they were fully set forth here.

---

DEBTORS' ORIGINAL COMPLAINT – Page 7

55. The Debtors seek a declaratory judgment that the Agreement is not a lease, but a financing agreement.

56. A bona fide and substantial controversy exists between Three Rivers and the Debtors as to the characterization of the Agreement.

57. A judgment as to the rights and obligations of the parties would clarify the legal issues regarding the Debtors' obligations to Three Rivers.

58. A judgment would finalize the controversy or offer relief from the uncertainty in existence between the parties.

59. Accordingly, the Debtors seek a declaratory judgment that the Agreement is a financing agreement, that they own the underlying real property, improvements, minerals, and personalty, and that, at most, Three Rivers has a lien or security interest in the same. The Debtors further seek a determination as to the validity of any such lien or security interest, including a determination that Three Rivers has no valid or perfected security interest with respect to any personalty or other property subject to the Uniform Commercial Code that is otherwise subject to the Agreement.

**COUNT II**         **AUTOMATIC STAY VIOLATION**

60. The Debtors incorporate their allegations above and below as though they were fully set forth here.

61. After the Petition Date, and with no relief from the automatic stay having been sought or obtained, Mr. Moore caused the Debtors to be locked out of the South Plant and removed computers from the Debtors' premises.

62.     There was not any order from the Court authorizing the removal of anything from the Debtors' premises, whether the goods were the Debtors' goods or goods leased and used by the Debtors in their operations.

63.     Upon information and belief, Mr. Moore was aware of this.  Upon further information and belief, Mr. Moore was aware because Mr. Moore was so informed by Debtors' counsel that the Debtors required access to the South Plant as part of their operations.

64.     In order to pressure the Debtors into making payments under the Agreement, and with knowledge of the Bankruptcy Cases and the automatic stay, Mr. Moore caused the property to be locked and the computers to be removed from the Debtors' premises.  To the extent that the Agreement is a true lease and the computers the property of Three Rivers, removing them would still violate the automatic stay.

65.     As such, Mr. Moore intentionally and knowingly exercised control over property in which the Estate had an interest, even if only an arguable interest, possessory interest, or limited interest under section 541(d) of the Bankruptcy Code.  He did so precisely to thwart the authority of this Court and to obviate the automatic stay, by deciding to take it upon himself to determine who owned what and who had what right to do something with respect to property in which the Estates had an obvious interest.

66.     Accordingly, the Debtors seek damages for Mr. Moore's willful and intentional violation of the automatic stay in the amount of the value of computers taken, the replacement cost of the computers, the loss of profits due to removal of the computers, as well as attorney's fees and punitive damages sufficient to punish Mr. Moore for his contempt and to deter similar behavior.

DEBTORS' ORIGINAL COMPLAINT – Page 9

**COUNT III**          **CONVERSION AGAINST MR. MOORE**

67.    The Debtors incorporate their allegations above and below as though they were fully set forth here.

68.    The Debtors own the computers under the Agreement.

69.    Upon information and belief, Mr. Moore unlawfully and without authorization assumed and exercised control over the computers inconsistent with FCI South's rights as owner of the computers, in the process converting the same.

70.    Debtors have demanded that Mr. Moore return the computers, but Mr. Moore has refused to do so.

71.    Further, Mr. Moore unlawfully and without authorization assumed and exercised control over the South Plant and other certain Debtors' assets.

72.    Debtors have been damaged as a result of Mr. Moore's conversion and are entitled to damages, prejudgment and postjudgment interest, and costs.

**COUNT IV**          **TEXAS THEFT LIABILITY ACT AGAINST MR. MOORE**

73.    The Debtors incorporate their allegations above and below as though they were fully set forth here.

74.    The computers were property of the Debtors.  Mr. Moore had access to the computers and knowledge of their location as the prior owner of the South Plant.  At no time did the Debtors authorize Mr. Moore to remove the computers. Upon information and belief, Mr. Moore intentionally and deceptively removed the computers.

75.    Accordingly, the Debtors seek a money judgment against Mr. Moore under section 134.003 and 134.005(a) of the Texas Civil Practice and Remedies Code for the computers wrongfully taken by him, the lost profits due to the theft, and the costs of replacing the computers.

76.     The Debtors further seek their reasonable and necessary attorney's fees and expenses incurred herein under section 134.005(b) of the Texas Civil Practice and Remedies Code.

## VI.     **PRAYER**

WHEREFORE, PREMISES CONSIDERED, the Debtors request that the defendants be cited to appear and to answer this Complaint and that they have a judgment as follows:

(i)     all equitable relief requested herein;

(ii)    a declaratory judgment that the Agreement is a financing Agreement;

(iii)   judgment against Defendants for any and all damages, of any type, as sought herein;

(iv)    money judgment against Mr. Moore under the Texas Theft Liability Act;

(v)     punitive damages;

(vi)    reasonable attorney's fees and expenses to the extent provided for by applicable law;

(vii)   prejudgment and postjudgment interest as allowed by law; and

(viii)  such other and further relief as may be appropriate.

RESPECTFULLY SUBMITTED this 24th day of March, 2026.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: */s/ J. Kyle Jaksa*
    Davor Rukavina, Esq.
    Texas Bar No. 24030781
    J. Kyle Jaksa, Esq.
    Texas Bar No. 24120923
    500 N. Akard St., Ste. 4000
    Dallas, TX 75201
    Telephone: (214) 855-7500
    E-mail: drukavina@munsch.com
    E-mail: kjaksa@munsch.com

**COUNSEL TO THE DEBTORS**