Stephen Lemmon
Texas Bar No. 12194500
Streusand Landon Osborne & Lemmon LLP
1801 N. Mopac Expwy, Suite 320
Austin, Texas 78746
Telephone (236-9900)
Email: lemmon@slollp.com

Mark C. Taylor
Texas Bar No. 19713225
Kane Russell Coleman Logan PC
401 Congress Avenue, Suite 2100
Austin, Texas 78701
Telephone:  (512) 487-6560
Email:  mtaylor@krcl.com

*Attorneys for FCI-SLG, LLC*

**UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 25-80481-mv1-11 |
| | § | |
| FCI SAND OPERATIONS, LLC, *et al*, | § | |
| | § | |
| Debtors.[1] | § | Jointly Administered |

**FCI-SLG, LLC'S EMERGENCY MOTION FOR AN ORDER PURSUANT TO
SECTION 1112(b) OF THE BANKRUPTCY CODE CONVERTING THESE CASES TO
CASES UNDER CHAPTER 7 OF THE BANKRUPTCY CODE**

**Emergency relief has been requested.  Relief is requested no later than 5:00 p.m. (CT) on April 27, 2026.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing or file a written response prior to the date that relief is requested in the preceding paragraph.  Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**TO THE HON. MICHELLE V. LARSON, UNITED STATES BANKRUPTCY JUDGE:**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if any, are: FCI Sand Operations, LLC (2539) and FCI South, LLC (4193) (the "Debtors"). The location of the Debtors' service address is 606 County Rd. 121, Marble Falls, TX 78654.

FCI-SLG, LLC ("**Secured Lender**"), the primary secured creditor of FCI Sand Operations, LLC and FCI South LLC (the "**Debtors**"), files this Emergency Motion for an Order Pursuant to Section 1112(b) of the Bankruptcy Code immediately converting these Chapter 11 cases to cases under Chapter 7.  In support of the Motion, the Secured Lender respectfully states as follows:

## PRELIMINARY STATEMENT

1.      These Chapter 11 cases were launched more than 8 months ago.  By almost any measure, the bankruptcy has been an abject failure.  Salient datapoints:

- **The Debtors have been unable to maintain operations.** As has been discussed at past hearings, the Debtors' operations are continuously falling short of projections, and the Debtors' equipment is constantly breaking down and in need of repair.  In fact, after finally reaching sales of 3-4,000 tons (briefly), the Debtors' operations are at a virtual standstill.

  Even with substantial DIP financing, the Debtors have been unable to make necessary capital expenditures, repairs and maintenance, much less operate at anything other than a continuing loss.

- **The cases are – and have long been – administratively insolvent**.  The Debtors currently only have approximately $400,000 in cash and do not have sufficient accounts receivable to cover postpetition payables.  The notion that additional DIP financing somehow cures the issues is misplaced, both because of the quantum of payables and ongoing cash flow issue and the fact that the DIP financing merely replaces administrative expenses with priming lien debt.

- **Insiders continue to profit**. Notwithstanding the atrocious operations, John Nelson and Kevon Collier continue to draw salaries.  John Nelson's company has been paid in excess of $1.3 million on a postpetition basis.

- **If all that is left is a sale, there is no reason that a Chapter 7 trustee cannot complete a sale process**.

2.      It is time to call it a day.  Irrefutable facts establish that this case warrants conversion to Chapter 7, pursuant to Bankruptcy Code Section 1112(b).

## JURISDICTION AND VENUE

3.      The Court has jurisdiction to hear this matter and enter a final order granting the relief requested herein pursuant to 28 U.S.C. §§ 1334 and 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), upon which this Court has the authority to enter a final order.

5.      The statutory and rule predicates for this Motion are 11 U.S.C. § 1112(b) and Rules 9014 and 1019 of the Federal Rules of Bankruptcy Procedure.

## RELEVANT FACTUAL BACKGROUND

**General Case Background.**

6.      On Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on July 30, 2025 (the "Petition Date"), commencing these jointly administered cases before this Court.

7.      Debtors own and operate two frac-sand mines and processing plants in the Eagle Ford Shale region of Texas. Their assets include real property, mineral leases, processing equipment, and an operating business with existing customer orders. The Secured Lender has a secured claim of more than $32 million secured by liens on nearly all the Debtors' property.

**Post-Petition Financing.**

8.      The Debtors have received $11 million from the $12.4 million in DIP financing approved by this Court. Once again unable to cash flow, Debtors are now seeking an additional $2.5 million in financing, $1.5 million of which will pay professional fees, $490,000 will pay outstanding payables owed to Tex Con, and the balance of which will again go to try to rectify the ongoing mechanical problems at the plant.

**Status of Debtors**

9.      *Financial Performance.* Even with the DIP financing proceeds, as of April 20, 2026, the Debtors have approximately $400,000 in cash, $3.4 million in postpetition payables and $2.5 million in accounts receivable.  Debtors have been unable to produce and sell sand on a consistent basis, and sold less than 70,000 tons in March.  While the Debtors' sales improved slightly in April, the Debtors once again appear to be facing issues and are making only minimal sales.  It is unclear at what level the Debtors can operate profitably.  When asked at his deposition on April 20, 2026, Mark Shapiro, the Debtors' CRO, testified that:

Q.      Do you know how many tons a day you need to sell to break even?
A.      Specifically, no.
Q.      Okay.  Can you give the Court a ballpark?
A.      No.  I don't want to guess at that number.
Q.      Okay.  Do you know how many tons a day you've averaged since you've been there?
A.      I told you I do not know specifically how many -- I have not calculated that number.

*See* Shapiro Depo., p. 14 l. 8-16.

10.      It is undisputed that millions of dollars have been budgeted for repairs, maintenance and capital improvements.  In fact, since the Petition Date, over 3.6 million has been spent on these items.  Notwithstanding these amount, the Debtors have been, and appear to be incapable of, maintaining operations at the plant.  Debtors have faced, and continue to face, breakdowns, equipment failures and poor operations.

11.      *Insider payments.* Notwithstanding the Debtors' poor performance, John Nelson and Kevin Collier are continuing to receive salaries, believed to be approximately $240,000 each, plus benefits and vehicle payments.  At his deposition, Mark Shapiro, testified that Collier is "involved with the operations of the company," but could not say what he does "other than being involved with the people and operations of the company."

4

12.     Moreover, John Nelson's company, JMN Enterprises, has been paid in excess of $1,350,000 since the Petition Date, on top of the payments made to JMN as a "critical vendor." While portions of that amount were for repair and construction work, the amounts were paid without a competitive bidding process and are billed as "due on receipt." Again, at his deposition, Mr. Shapiro testified that:

> Q.     Okay. Since you've been retained, what have you done to make sure that there was competitive bidding?
> A.     Competitive bidding for what?
> Q.     For the money that has been spent maintaining and improving equipment, as well as capital expenditures.
> A.     Oh, I don't believe we've changed vendors, so most of the competitive bidding would have already taken place before I got there.
> Q.     So let me be absolutely clear. Since you've been there, you're unaware of any competitive bidding that's taken place?
> A.     I'm also unaware of competitive bidding that didn't take place.

Shapiro Depo., p.43 L. 7-19.

13.     *Lack of any Plan*. The Debtors, in over 8 months, have been unable to move this case forward in a meaning manner. The "sale process" sat for months. No proposed plan has been filed, notwithstanding the large amount of fees incurred by estate professionals. There is nothing to do at this point other than liquidate assets.

**RELIEF REQUESTED**

14.     By this Motion, the Committee seeks entry of an Order substantially in the form attached hereto as **Exhibit A** immediately converting the Debtors' Chapter 11 cases to cases under Chapter 7 of the Bankruptcy Code.

**ARGUMENT**

15.     Bankruptcy Code Section 1112(b) provides that, on request of a party in interest, and after notice and a hearing, "the Court shall convert a case to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant

5

establishes cause." 11 U.S.C. § 1112(b)(1). "The inquiry under § 1112 is case-specific, focusing on the circumstances of each debtor." *United Savs. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd. (In re Timbers of Inwood Forest Assocs., Ltd.),* 808 F.2d 363, 371–72 (5th Cir.1987) (en banc).

16.    Although "cause" is not defined, Section 1112(b)(4) provides a list of 16 "causes" for conversion. 11 U.S.C. § 1112(b)(4)(A)-(P). These include factors going to the debtors' actions is managing the estate and its ability to move the case forward, such as the: (A) "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation"; (B) gross mismanagement of the estate and (J) "failure to … confirm a plan withing the time fixed by this title". Yet, the list of 16 are just statutory examples and are non-exhaustive. *In re TMT Procurement Corp.,* 534 B.R. 912, 917 (Bankr. S.D. Tex. 2015); *In re Am. Capital Equip., LLC*, 688 F.3d 145, 1662 n. 10 (3d Cir. 2012) ("the listed examples of cause are not exhaustive").

17.    Once a movant has established "cause," the burden then shifts to the Debtors to prove it falls within the Section 1112(b)(2) "unusual circumstances" exception to Section 1112(b)(1)'s mandatory conversion. *See, e.g.*, *In re Baribeau*, 603 B.R. 797, 802 (Bankr. W.D. Tex. 2019).

18.    Notwithstanding, such exception under Section 1112(b)(2) is not applicable when the cause for conversion is on account of "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." *See In re Ford Steel, LLC*, 629 B.R. at 879 ("If the [movant] can establish cause under § 1112(b)(4)(A), conversion or dismissal becomes mandatory because § 1112(b)(2) does not provide an exception to conversion or dismissal for cause found under § 1112(b)(4)(A).").

19.    Both prongs of 11 U.S.C. § 1112(b)(4)(A) are met here, as is (b)(4)(B) . The Debtors' financial history shows continuing losses and an inability to fund its operations.

6

**I.    The Debtors Have Accrued Substantial Losses and are Administratively Insolvent.**

20.    "However honest in its efforts the debtor may be, and however sincere its motive…[the] court is not bound to clog its docket with visionary or impracticable schemes for resuscitation." *Tennessee Publishing Co. v. Am. Nat'l. Bank*, 299 U.S. 18, 22 (1936).  Setting aside reasonable questions regarding honesty and sincerity and addressing the incorporation of this longstanding principle into the Bankruptcy Code by governing standards, cause is found for conversion here because remaining in Chapter 11 would only continue the Debtors' pattern of incurring losses and burdening the Court and professionals with futile procedures and costs.

21.    Under the Code, a debtor shows "substantial or continuing loss" if losses materially "negatively impact the bankruptcy estate and interest of creditors." *In re Ozcelebi*, 639 B.R. 365, 384 (Bankr. S.D. Tex. 2022).  "Cause can be shown by demonstrating that the debtor suffered or has continued to experience a negative cash flow or declining asset values following the order for relief." *In re TMT Procurement Corp.*, 534 B.R. at 918 (citing *In re Paterno*, 511 B.R. 62, 66 (Bankr. M.D.N.C. 2014)).  "Negative cash flow and an inability to pay current expenses as they come due can satisfy the substantial loss or diminution of the estate for purposes of § 1112(b)." *Id* at 919; *cf. In re BH S & B Holdings, LLC*, 439 B.R. 342, 349 (Bankr. S.D.N.Y. 2010).[2]

22.    Inability to pay the estate's professional fees is itself evidence of substantial and continuing losses. *In re Hao*, 644 B.R. 339, 347 (Bankr. E.D. Va. 2022).  In *In re Hao*, the bankruptcy court entered a conversion order because the "Debtor has no ability to pay the ongoing professional

---

[2]    "[A]dministrative insolvency suggests diminution in the value of the estate, thereby precluding all creditors from achieving maximum economic value." *Id*. at 350; *see also In re Weiss Multi-Strategy Advisers LLC*, No. 24-10743 (MG), 2024 WL 2767893, at *10 (Bankr. S.D.N.Y. May 29, 2024) ("Persistent losses during the course of a bankruptcy case come at the expense of creditors…"); *In re Moore Const. Inc.*, 206 B.R. 436, 437–38 (Bankr. N.D. Tex. 1997) ("The failure to pay post-petition employment taxes alone is cause for converting a case to Chapter 7. When a Debtor has this much tax debt, which is continually accruing, and cannot show the ability to produce a cash profit, it becomes apparent that the Debtor is gambling with the creditors' interests.").

fees in this case." *Id.* Other courts have reached the same conclusion based on patterns of declining fortunes evident in monthly operating reports and valuation reports that show an inability to "pay current expenses as they come due." *In re Gateway Access Solutions, Inc.*, 374 B.R. 556, 564 (Bankr. M.D. Pa. 2007); *cf. In re AdBrite Corp.*, 290 B.R. 209, 215 (Bankr. S.D.N.Y. 2003); *In re Motel Properties, Inc.*, 314 B.R. 889, 894 (Bankr. S.D.Ga. 2004); *In re Route 202 Corp. t/a Lionti's Villa*, 37 B.R. 367, 374 (Bankr. E.D.Pa. 1984); *In re Galvin*, 49 B.R. 665, 669 (Bankr. D.N.D. 1985).

23.     In *In re BH S & B Holdings*, for example, the debtors' administrative insolvency constituted cause to convert the cases under similar circumstances:[3] the carve-out for administrative expenses had been exhausted, the DIP lender was unwilling to make additional funds available for case administration, and the debtors had not paid professional fees that continued to grow past limited cash on hand.  439 B.R. at 349.

24.     The Debtors here find themselves in a situation common to the cases cited above.  The record is sufficient to show a substantial loss to the estates during these cases, and ongoing inability to operate without additional first-lien priming financing.  More generally, the Debtors have been able to operate in Chapter 11 only by withholding payment from estate professionals and postpetition payables, allowing these and other post-petition debts to accrue.

---

[3]     The *BH S & B* court found that administrative insolvency was cause for converting the debtors' cases, *in addition* to cause under section 1112(b)(4)(A).  The court concluded that cause existed under section 1112(b)(4)(A), because "the Debtors' financial statements reflect[ed] continuing losses and the Debtors' intention to liquidate establish[ed] that there [was] no likelihood of rehabilitation." *In re BH S & B*, 439 B.R. at 348.  The court then separately addressed administrative insolvency as additional cause, stating that it "***further*** concludes that the Debtors' administrative insolvency constitutes cause to convert these cases," *id*. at 349 (emphasis added), and that "cause exists on the basis of administrative insolvency," *id.* at 350.

**II.      There Is No Likelihood of Rehabilitation.**

25.      The second prong of section 1112(b)(4)(A), the lack of a "likelihood of rehabilitation" can be established by showing that the debtor will not be "reestablished on a secured financial basis, which implies establishing a *cash flow* from which its current obligations can be met."  *In re AdBrite Corp.*, 290 B.R. 209, 216 (Bankr. S.D.N.Y. 2003) (emphasis added).  This is sometimes addressed as a question of whether the debtor is "suffering losses or making gains."  *In re Gateway Access Solutions, Inc.*, 374 B.R. at 562.

26.      In other words, although inability to confirm a plan and prejudicial delay are separate cause for conversion, the "rehabilitation" prong requires inquiry into whether under the best of circumstances continuance in Chapter 11 will see the company back on a sound basis.  *See In re AdBrite Corp.*, 290 B.R. at 216 (citing *In re Lizeric Realty Corp.*, 188 B.R. 499, 503 (Bankr. S.D.N.Y. 1995)).  Where a debtor lacks sufficient resources to not only pay the administrative costs of remaining in Chapter 11 but has no prospect of improved fortunes sufficient to reestablish the business, this prong is met and the case should be dismissed.  *See In re 15375 Mem'l Corp.*, 386 B.R. 548, 552 (Bankr. D. Del. 2008).[4]

---

[4]      This is true even if continuation in Chapter 11 appears to benefit certain constituencies in the short term.  *See, e.g. In re Defender Drug Stores, Inc.*, 145 B.R. 312, 317 (B.A.P. 9th Cir. 1992) (prohibiting "convert[ing] the bankruptcy process from one designed to benefit all creditors to one designed for the unwarranted benefit of the postpetition lender."); *In re Nova Wildcat Shurt-Line Holdings, Inc.*, No. 23-10114 (CTG) (Bankr. D. Del. 2023), Mar. 2, 2023 H'rg Tr. at 87:14-21 [Docket No. 212] ("if you're a secured creditor and want to invoke the bankruptcy process for the purpose of what will likely be maximizing the value of your collateral, you don't get to impose the costs of that on other people … you've got to pay the freight associated with [that] process … includ[ing] paying the expected administrative expenses [of the case] includ[ing] reasonable committee fees"); *In re NEC Holdings Corp.*, Case No. 10-11890 (KG) (Bankr. D. Del. July 13, 2010) Hr'g Tr. at 100:17- 20 (indicating that secured creditors have "got to pay the freight, and the freight is . . . certainly an administratively solvent estate"); *In re Gulf Coast Oil Corp.*, 404 B.R. 407, 428 (Bankr. S.D. Tex. 2009) (denying sale where "[t]he only effect of the bankruptcy process would be to transfer the debtors' assets to its secured creditor with benefits that the creditor could not achieve through foreclosure."); *In re Encore Health Assocs.*, 312 B.R. 52 (Bank. E.D. Pa. 2004) (finding that a Chapter 11 proceeding should not run for the sole benefit of a secured creditor without any other objective).

27.    Rehabilitation prospects can be gleaned from business projections and monthly reports.  For instance, in *In re Gateway Access Solutions*, the bankruptcy court converted where, among other things, operating reports reflected downward trends and rosy projections were unreliable.  374 B.R. at 562-63.  Here, the Debtors' fortunes are similarly evident from the cash budgets, which have shown no material improvement.

28.    Regardless, continuing losses such as those evident in the record of these Cases can alone show that rehabilitation is unlikely.  *In re AdBrite Corp.*, 290 B.R. at 215 (citing *In re Photo Promotion Assocs.*, 47 B.R. 454, 458-59 (S.D.N.Y. 1985).  For instance, in *In re Moore Construction*, a bankruptcy court in this district approved conversion where mounting post-petition tax accruals and budgets reflected a "current inability to make a profit."  206 B.R. 436, 438 (Bankr. N.D. Tex. 1997).

29.    Here, rehabilitation is not reasonably likely.  But for the DIP financing, The Debtors cannot fully pay the professional costs and postpetition payables of Chapter 11.  The Debtors have consistently failed to meet projections and continue to incur losses.  There is nothing to do but liquidate.

## III.    Conversion is appropriate based on gross mismanagement

30.    As noted above, the Debtors have done nothing more than pour $11 million, plus collections from receivables, down a black hole.[5]  There are no operating reserves, no funds for necessary capex, maintenance and repairs, and the related expenditures to date have not resulted in any real increase in sales, nor any consistent operations.  The Debtors' management is, frankly, incapable of operating a frac sand plant as they have demonstrated during this case.  What management has done is ensure payment to themselves.

---

[5] This does not even consider the prepetition funding of $26.5 million provided by Secured Lender, funds purportedly contributed form equity sales, and millions in unsecured loans.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, the Secured Lender respectfully requests that the Court grant the Motion converting these Chapter 11 cases to cases under Chapter 7 and grant such other and further relief as is just and proper.  The Secured Lender otherwise and generally reserves all of its rights, claims, defenses, and remedies, including, without limitation, the right to amend, modify, or supplement this Motion, seek discovery, raise additional objections during any hearing, and negotiate and document alternative proposals for relief.

Respectfully submitted,

**STREUSAND, LANDON, OZBURN & LEMMON LLP**
Stephen W. Lemmon
State Bar No. 12194500
lemmon@slollp.com
Rhonda B. Mates
State Bar No. 24040491
mates@slollp.com
801 S. MoPac Expressway, Suite 320
Austin, Texas 78746
Telephone:  (512) 236-9900
Telecopier:  (512) 236-9904

and

**KANE RUSSELL COLEMAN LOGAN PC**

By: */s/ Mark C. Taylor*
        Mark C. Taylor
        State Bar No. 19713225
401 Congress Avenue, Suite 2100
Austin, Texas 78701
Telephone:  (512) 487-6560
Telecopier:  (214) 777-4299
Email: Mtaylor@krcl.com

**ATTORNEYS FOR FCI-SLG, LLC**

11

## CERTIFICATE OF CONFERENCE

I certify that on April 21-22, 2026, counsel for the Secured Lender conferred with counsel for the Debtors and the Committee by email regarding the Motion and the relief requested herein. Counsel for the Debtors and the Committee informed the Secured Lender's counsel that the Debtors oppose the relief requested.

*/s/ Mark C. Taylor*
Mark C. Taylor

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served electronically upon those parties receiving the Court's ECF e-mail on April 22, 2026, including counsel listed below:

Davor Rukavina, Esq.
J. Kyle Jaksa, Esq.
Munsch Hardt Kopf & Harr, P.C.
500 N. Akard St., Suite 4000
Dallas, Texas 75201
drukavina@munsch.com
kjaksa@munsch.com

*/s/ Mark C. Taylor*
Mark C. Taylor

12

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **CASE NO. 25-80481-mv1-11** |
| | § | |
| **FCI SAND OPERATIONS, LLC,** *et al*, | § | |
| | § | |
| **Debtors.**[1] | § | **Jointly Administered** |

**ORDER GRANTING EMERGENCY MOTION FOR AN ORDER
PURSUANT TO SECTION 1112(B) OF THE BANKRUPTCY CODE CONVERTING
THESE CASES TO CASES UNDER CHAPTER 7 OF THE BANKRUPTCY CODE**

CAME ON FOR CONSIDERATION *FCI-SLG, LLC's Emergency Motion for an Order Pursuant to Section 1112(b) of the Bankruptcy Code Converting These Cases to Cases Under Chapter 7 of the Bankruptcy Code* (the "**Motion**")[2] filed by FCI-SLG, LLC ("**Secured Lender**") requesting that the Court convert these Bankruptcy Cases pursuant to section 1112(b) of the Bankruptcy Code and Rule 1019 of the Bankruptcy Rules.  The Court finds that (i) it has

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if any, are: FCI Sand Operations, LLC (2539) and FCI South, LLC (4193) (the "Debtors"). The location of the Debtors' service address is 606 County Rd. 121, Marble Falls, TX 78654.

[2] Capitalized terms not defined herein have the meanings provided in the Motion unless otherwise noted.

---

jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (iii) proper and adequate notice of the Motion has been provided, and no other or further notice is necessary; and (iv) good and sufficient cause exists for granting the relief set forth herein. Accordingly, it is HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      The above-captioned Bankruptcy Cases are hereby converted to a case arising under chapter 7 of the Bankruptcy Code.

3.      The Court retains jurisdiction to hear and determine all matters arising from or related to this Order.

###End of Order####

ORDER PREPARED AND SUBMITTED BY:

STREUSAND, LANDON, OZBURN & LEMMON LLP
Stephen W. Lemmon
State Bar No. 12194500
lemmon@slollp.com
Rhonda B. Mates
State Bar No. 24040491
mates@slollp.com
801 S. MoPac Expressway, Suite 320
Austin, Texas 78746
Telephone:  (512) 236-9900
Telecopier:  (512) 236-9904

and

KANE RUSSELL COLEMAN LOGAN PC
Mark C. Taylor
State Bar No. 19713225
401 Congress Avenue, Suite 2100
Austin, Texas 78701
Telephone:  (512) 487-6560
Telecopier:  (214) 777-4299
Email: Mtaylor@krcl.com

**ATTORNEYS FOR FCI-SLG, LLC**