**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re: | |
| | |
| FCI SAND OPERATIONS, LLC, *et al.* | Case No. 25-80481 |
| | |
| Debtors. | Chapter 11 Case
(Jointly Administered) |

**ORDER APPROVING THE DEBTORS'
EMERGENCY MOTION (I) APPROVING ADDITIONAL
POSTPETITION FINANCING ON FIRST PRIORITY, PRIMING
BASIS, (II) APPROVING THE DEBTORS' SELECTION OF A
STALKING HORSE BIDDER, (III) APPROVING BID PROTECTIONS
IN CONNECTION THEREWITH, AND (IV) GRANTING RELATED RELIEF**

Upon the *Debtors' Emergency Motion (i) Approving Additional Postpetition Financing on First Priority, Priming Basis, (ii) Approving the Debtors' Selection of a Stalking Horse Bidder, (III) Approving Bid Protections in Connection Therewith, and (IV) Granting Related Relief* (the "Motion")[1] of the above-captioned debtors and debtors in possession, FCI Sand

---

[1] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Motion, the Second DIP Amendment, First DIP Order, or Credit Agreement as applicable.

1

Operations, LLC ("FCI"), debtor-in-possession, and debtor-in-possession FCI South, LLC ("South", collectively with FCI, the "Debtors" or "Borrowers"), seeking entry of an order (this "Order") pursuant to sections 105, 363, 364, 503, and 507 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 9013-1 of the Local Rules of the U.S. Bankruptcy Court for the Northern District of Texas (the "Local Rules"), and Section D.10 of the Procedures for Complex Cases in the Northern District of Texas (the "Complex Case Procedures"), *inter alia*:

(i)      authorizing the Debtors to enter into an amendment to the DIP Loan (the "Second DIP Amendment") with GrayStreet Credit, LLC ("GrayStreet" or "DIP Lender"), in which the DIP Lender will make available additional funds up to $2,500,000 (the "Additional DIP Financing");

(ii)      authorizing the Debtors to execute and deliver the Second DIP Amendment and any other agreements, instruments, and other loan documents and/or documents related thereto (as amended, restated, supplemented, waived, and/or modified from time to time) and to perform such other acts as may be necessary or desirable in connection with the Second DIP Amendment;

(iii)     approving GrayStreet Credit, LLC as the Stalking Horse Bidder;

(iv)     approving the Bid Protections (defined below) in connection with the selection of the Stalking Horse Bidder; and

(v)      granting related relief.

The Court having considered the Motion and the Second DIP Amendment and the evidence submitted and argument made at the hearing on the Motion (the "Hearing"); and proper

notice under the circumstances having been provided; and it appearing that approval of the final relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates, and all parties in interest, and is essential for the continued operation of the Debtors' businesses and the maximization of the value of the Debtors' assets; and it appearing that the Debtors' entry into the Second DIP Amendment, selection of the DIP Lender as the stalking horse bidder, and providing bid protections in connection therewith is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[2]**

1.  **<u>Authorization of the Second DIP Amendment</u>**. The Second DIP Amendment is hereby approved.  The Debtors are expressly and immediately authorized and empowered to execute and deliver the Second DIP Amendment and to incur and to perform the obligations in accordance with, and subject to, the terms of this Order and the Second DIP Amendment, and to deliver all instruments, certificates, agreements, and documents that may be required or necessary for the performance by the Debtors under the Second DIP Amendment.

2.  **<u>Terms</u>**.  All terms and conditions of the *Final Order Granting Debtors' Motion for Interim and Final Approval of Superpriority and First Priority Secured Postpetition Financing* [Dkt. No. 140] ("<u>First DIP Order</u>") and the *Order Approving Debtors' Emergency Motion for Approval of Additional Postpetition Financing on First Priority, Priming Basis* [Dkt.

---

[2]  The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

No. 266] (together with the First DIP Order, the "DIP Orders") shall remain in full force and effect and apply to the Additional DIP Financing except those expressly amended by this Order and the Second DIP Amendment.

3. **Budget**.   The Budget attached hereto as Exhibit "A" is approved and shall additionally constitute authority to use the DIP Lender's cash collateral as provided therein, subject to such variances as provided for in the DIP Orders, until such time as an Event of Default occurs.  For the avoidance of doubt, any expenditure in the Budget that requires Court approval to pay shall continue to be so required.  Furthermore, in agreeing to the Motion, no party waives any objection it may have to expenses in the Budget and reserves all rights to contest the same.

4. **Maturity Date**.   The DIP Obligations shall become due and payable in full upon the earliest to occur of (a) the date the Debtors consummate a sale of substantially all of the Debtors' assets, (b) the date a plan of reorganization becomes effective, (c) September 18, 2026, (d) the date on which all the DIP Loans shall become due and payable in full hereunder, whether by acceleration or otherwise in accordance with the applicable DIP Order, or (e) the payment in full of all outstanding Obligations under the DIP Facility and the termination of all commitments in connection therewith (the "DIP Maturity Date"); provided, however, that no sale of all or substantially all of the Debtors' assets, whether pursuant to Bankruptcy Code section 363 or under a plan, shall be consummated unless and until all DIP Obligations (other than the Repayment Fee) are indefeasibly paid in full in cash simultaneously with or prior to the closing of such sale, and such payment shall be a condition precedent to the closing of any such sale.

5. **Events of Default**.  The Milestones will be revised per the following:

   a. Paragraph 21.a.2 of the First DIP Order shall be replaced in its entirety with the following: "The Debtors shall select the DIP Lender as the Stalking Horse Bidder

and seek court approval of the Stalking Horse Bidder on an expedited basis on or before April 24, 2026."

b. Paragraph 21.a.3 of the First DIP Order shall be replaced in its entirety with the following: "The Debtors shall conduct an Auction for the sale of substantially all assets of the Debtors no later than May 27, 2026."

c. A new Paragraph 21.a.5. of the First DIP Order shall be added as follows: "The Debtors shall file a notice of the winning bid, together with particulars, on May 28, 2026."

d. A new Paragraph 21.a.6. of the First DIP Order shall be added as follows: "The Debtors shall obtain entry of an order approving the sale of substantially all assets of the Debtors by no later than June 15, 2026."

e. A new Paragraph 21.a.7 of the First DIP Order shall be added as follows: "Within 45 days from entry of the Order on Second Amendment, Debtors shall begin applying for natural gas pipeline permits. Debtors shall provide DIP Lender with an estimated schedule and cost estimate."

f. A new Paragraph 21.a.8. of the First DIP Order shall be added as follows: "By the closing date of a sale of substantially all the Debtors' assets, Debtors will have prepared and agreed to amended and revised Royalty Agreements (as such term is defined in the *Omnibus Motion for an Order Authorizing the Assumption of Certain Unexpired Leases and Granting Related Relief* [Dkt. No. 344]), and DIP Lender shall have received, in form and substance acceptable to DIP Lender, a counsel opinion that such related leasehold interests are free from defects or any defects have been cured or are subject to an approved cure plan acceptable to the DIP Lender."

6.   Notwithstanding any procedure set forth in the *Order Approving Bidding and Auction Procedures for the Sale of Substantially all Assets of the Debtors* [Dkt. No. [●]414] (the "Bidding Procedures Order"), GrayStreet shall be the Stalking Horse Bidder for substantially all of the Debtors' Assets (the "Assets").

7.   The Debtors are authorized, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, to enter into and perform under the Stalking Horse Asset Purchase Agreement (the "Stalking Horse APA"), subject to higher and/or better bids regarding the Assets in accordance with the Bidding Procedures.

8. The Debtors are authorized to perform all obligations of the Debtors set forth in the Stalking Horse APA that are intended to be performed prior to the applicable sale hearing for the Assets and prior to the entry of the applicable sale order for the Assets, subject to the terms of the Bidding Procedures.

9. Notwithstanding anything in the Bidding Procedures Order to the contrary, pursuant to Bankruptcy Code sections 105, 363 and 503, the Bid Protections are hereby approved and the Debtors are hereby authorized to pay the Bid Protections to the Stalking Horse Bidder pursuant to the terms of the Stalking Horse APA and Second DIP Amendment.

10. **Stalking Horse Bid**.  The Stalking Horse Bid shall consist of the following consideration (collectively, the "Baseline Bid"): (i) a credit bid of all DIP Obligations (other than the Repayment Fee) then owed to the DIP Lender, inclusive of principal, accrued interest, fees, and other amounts due under the DIP Credit Agreement and associated DIP Obligations; (ii) the DIP ~~Lender shall~~Lender's release ~~of~~ its ~~liens~~Liens on the ~~accounts receivable~~Accounts Receivable of the ~~Debtors~~Sellers; and (iii) the DIP ~~Lender shall accept and assume~~Lender's acceptance and assumption of the administrative liabilities associated with the transfer of the Purchased Assets, including but not limited to accrued ~~postpetition~~post-petition payroll and trade payables, up to a maximum of $~~2,500,000. The Baseline Bid shall be~~2,500,000.00, in each case as set forth in, and subject to adjustment for any additional DIP Obligations incurred between the date of ~~this~~the Stalking Horse Order and the ~~closing date~~Closing Date in accordance with, the Stalking Horse Order.

11. **Credit Bid Authorization**.  Pursuant to Bankruptcy Code section 363(k) and Paragraph 29 of the First DIP Order, the DIP Lender is expressly authorized to credit bid all or any portion of the DIP Obligations (other than the Repayment Fee) in connection with any sale

of the Assets, whether at Auction or otherwise, and the Debtors shall not object to such credit bid.  The right of the DIP Lender to credit bid is in addition to, and not in limitation of, any other rights of the DIP Lender under the DIP Orders, the DIP Loan Documents, or applicable law.

12.     **Bid Protections**.  In consideration of the Stalking Horse Bidder's expenditure of time, effort, and resources in negotiating the Stalking Horse APA and establishing a price floor for the Assets, the Stalking Horse Bidder shall be entitled to receive a break-up fee equal to 3% of the Baseline Bid (the "Break-Up Fee" and, together with all obligations of the Debtors in respect thereof, the "Bid Protections"), inclusive of expenses, which shall be earned by and payable to the Stalking Horse Bidder upon the occurrence of any of the following as long as the Stalking Horse Bidder has not breached the Stalking Horse APA (each, a "Trigger Event"): (a) the Stalking Horse Bid is overbid at Auction and a competing bid is designated as a higher and better bid; (b) the Debtors consummate any sale, transfer, or other disposition of all or substantially all of the Assets to any party other than the Stalking Horse Bidder, whether pursuant to Bankruptcy Code section 363, a confirmed plan of reorganization, or otherwise; and (c) the Debtors withdraw or materially modify the proposed sale process without the prior written consent of the Stalking Horse Bidder.  The Break-Up Fee shall constitute an allowed administrative expense claim under Bankruptcy Code sections 503(b)(1)(A) and 507(a)(2) and shall be payable at closing of any Trigger Event without further order of the Court.

13.     **Minimum Overbid Increment**.  Any Qualified Bid (as defined in the Bidding Procedures) must exceed the Baseline Bid, plus the aggregate amount of the Bid Protections, plus an initial overbid increment of $1,500,000 (the "Initial Overbid Increment"). Subsequent overbids at Auction shall be in minimum increments of $250,000 or such other amount as the Debtors, in consultation with the DIP Lender, may announce at the Auction. Notwithstanding the

foregoing, when calculating the value of any bid or overbid submitted by the Stalking Horse Bidder at the Auction, the Stalking Horse Bidder shall receive a credit equal to the aggregate amount of the Bid Protections, such that the Stalking Horse Bidder shall not be required to bid against its own Bid Protections.  For the avoidance of doubt, all bids shall be evaluated on a net-to-estate basis, with the Bid Protections treated as a cost of any non-Stalking Horse bid.

14.      **Deposit Waiver**.  The Stalking Horse Bidder shall not be required to submit a good faith deposit in connection with the Stalking Horse Bid.

15.      **Designation Rights**.  The Stalking Horse Bidder shall have the right, at or prior to closing, to designate one or more affiliates or related entities (each, a "Designee") to acquire some or all of the Assets at closing; provided that such designation shall not relieve the Stalking Horse Bidder of its obligations under the Stalking Horse APA unless the Designee assumes such obligations in writing.

16.      **Professional Carve Out Amounts**.  The amounts included in the Budget for Professional Persons shall be deposited into a segregated account of the Debtors to be used solely to pay the applicable Professional Person upon interim or final allowance of their fees.

17.      Notwithstanding anything in this Order or the Second DIP Amendment to the contrary, the DIP Lender's liens on the DIP Collateral shall remain subject and subordinate only to the Carve Out as provided by the First DIP Order.

18.      16. The Debtors are hereby authorized and empowered to take such actions as may be necessary to implement and effect the terms and requirements established by this Order.

19.      17. Notwithstanding Bankruptcy Rules 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

20.      18. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order. To the extent there is any conflict between the terms of this Order and the terms of the Bidding Procedures Order, the terms of this Order shall control.

### End of Order ###

Submitted by:

Davor Rukavina, Esq.
Texas Bar No. 24030781
J. Kyle Jaksa, Esq.
Texas Bar No. 24120923
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard St., Ste. 4000
Dallas, TX 75201
Telephone:   (214) 855-7500
E-mail:        drukavina@munsch.com
                  kjaksa@munsch.com

**COUNSEL TO THE DEBTORS**

| Summary report: Litera Compare for Word 11.12.0.83 Document comparison done on 4/29/2026 11:15:45 AM | |
|---|---|
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** Second Additional DIP Order Final.docx | |
| **Modified filename:** Second Additional DIP Order Final.docx | |
| **Changes:** | |
| Add | 21 |
| Delete | 13 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 34 |